# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **BEAZLEY UNDERWRITING, LTD.,** | § | |
| *Plaintiff,* | § | |
| | § | **6:20-CV-00829-ADA** |
| v. | § | |
| | § | |
| **DANIELS HOSPITALITY GROUP,** | § | |
| **LLC** | § | |
| *Defendant.* | | |

## ORDER GRANTING PLAINTIFF BEAZLEY'S MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court is Plaintiff's Motion for Judgment on the Pleadings pursuant to Rule 12(c), (ECF No. 12), Defendant's Response in Opposition (ECF No. 17), and Plaintiff's Reply (ECF No. 18). After considering these pleadings and the relevant legal authority, the Court is of the opinion that Plaintiff's Motion for Judgment should be **GRANTED**.

## I. Background

This is commercial property insurance case involving a COVID-19 claim for decreased restaurant sales. ECF No. 12, pg. 1. Daniels Hospitality Group ("Daniels") is the Named Insured under a commercial property policy (the "Policy") subscribed to by Beazley Underwriting, LTD. ("Beazley"). The Policy provides property damage and business income coverage to a group of service and hospitality properties owned and operate by Daniels (the "Properties"). ECF No. 12, pg. 1. Under the Policy, Daniels demanded $1,265,879.74 for alleged COVID-19 losses following Governor Abbott's and other state governmental orders imposing dining room restrictions on restaurants across the state. ECF No. 12, pg. 3. On September 10, 2020, Beazley sought a Declaratory Judgment relating to this matter pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201. ECF No. 1. After Daniels provided its Answer and Affirmative Defenses, (ECF No. 7), Beazley motioned for Judgment on the Pleadings under Rule

12(c). ECF No. 12. Daniels filed a Response in Opposition (ECF No. 17) on January 8, 2021, which Beazley filed a Reply to on January 15, 2021.

## II. Standard of Review

A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice. *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 964 (S.D. Tex. 2016); *Filgueria v. U.S. Bank Nat. Ass'n*, 2013 WL 127559 (S.D. Tex. 2013), *aff'd*, 734 F.3d 420 (5th Cir. 2013).

## III. Discussion

The construction of an insurance policy is a question of law in which courts apply the general rules of contract construction to ascertain the parties' intent. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). A court must read all parts of the policy together, striving to give meaning to all portions while avoiding rendering any portion inoperative. *Gilbert Tex. Constr.*, 327 S.W.3d at 126; *U.S. Fire Ins. Co.*, 264 S.W.3d at 167. Texas law provides that "the paramount rule is that courts enforce unambiguous policies as written" such that courts must "honor the plain language, reviewing policies as drafted, not revising them as desired." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). Policy language is ambiguous if it is reasonably capable of being interpreted in more than one way. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The insured bears the burden of showing that a loss is

covered, while the insurer bears the burden of establishing that policy exclusions apply. *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011).

**1. Policy Coverage**

As Beazley discussed in its Motion, courts across the country have recently been charged with the responsibility of determining the scope of insurance policy coverage in light of the COVID-19 pandemic. ECF No. 12, pg. 1. Beazley argues that Daniels did not sustain "direct physical loss of or damage to property" required to trigger coverage under the Policy and further asserts that Daniels' claims are based entirely on "lost income." ECF No. 12, pg. 8. In its Motion, Beazley's argument predominantly relies on recent decision within this District involving similar insurance language and COVID-19. *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020). Daniels counters by asserting that the policy language is instead ambiguous as Beazley fails to consider the distinction between "loss" and "damage" being separate grounds for showing that the insured's property was affected by a covered event. ECF No. 17, pg. 11. Daniels' position is bolstered by the fact that the policy in *Diesel* only insures for "direct physical loss" of covered property, compared to the Policy here that includes additional language for "damage to property." *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, at *2 (W.D. Tex. Aug. 13, 2020); ECF No. 17, pg. 11. However, the Court nevertheless finds no need to further entertain Daniels' argument. After Beazley filed its Motion, other courts have since interpreted language identical to that of the Policy and decided in favor of the insurer. ECF No. 18, pg. 7. The Court finds the *Steiner Steakhouse* decision to be particularly relevant, as it involves facts virtually identical to the facts of this case. *Steiner Steakhouse, LLC v. AMCO Ins. Co.*, 2020 WL 8879041 (W.D. Tex. Dec. 30, 2020). In *Steiner Steakhouse*, the Court held that "direct physical loss of or damage to property"

is not ambiguous because it has a legally established meaning of "distinct, demonstrable, physical alteration of the property" under Texas law. *Steiner Steakhouse, LLC v. AMCO Ins. Co.*, 2020 WL 8879041, at * (W.D. Tex. Dec. 30, 2020). Subsequently, the Court concluded that the restaurant did not suffer "direct physical loss of or damage to property" after finding that no "distinct, demonstrable, physical alteration of the property" ever occurred. *Id* at *4. Beazley finds additional support in the *Hajer* decision, where the Court similarly concluded that a governmental order forcing closure of a business in response to COVID-19 did not allow for coverage because "monetary loss is not a 'distinct, demonstrable, physical alteration to the property.'" *Hajer v. Ohio Security Insurance Company*, 2020 WL 7211 636, at *3 (E.D. Tex. Dec. 7, 2020). The Court agrees with the Courts in sister districts, and consequently finds that Daniels did not suffer "direct physical loss of or damage to property" under the Policy.

**2. Civil Authority Coverage**

Beazley asserts in its Motion that Daniels cannot establish Civil Authority coverage as it cannot make the required showings that (1) the government orders were issued due to direct physical loss of or damage to property elsewhere, and (2) the government orders prohibited access to its properties. ECF No. 12, pg. 14. Daniels disagrees and argues that it can make such showings, and that Beazley's argument fails as a matter of law. ECF No. 17, pg. 14.

For the first element, Daniels asserts that the COVID-19 virus can cause "physical loss" under the policy despite the absence of any tangible destruction of covered property. ECF No. 17, pg. 14. It supports its argument by citing to a number of cases decided well before the pandemic. *Id*. Conversely, Beazley argues that even if Daniels were correct, Civil Authority Coverage still does not exist because the governmental orders were not issued because of

damage to other property and because Daniels failed to identify specific property damage that triggered the act of civil authority.

The Court finds that Daniels cannot satisfy the first element required to establish civil authority coverage. As Beazley discusses in its Reply, the civil authority provision "requires the physical damage to prompt the act of civil authority, not the other way around." *Hajer*, 2020 WL 7211636, at *4; ECF No. 18, pg. 9. Here, the governmental orders were not issued in response to physical damage that had already occurred; instead, the orders were issued to mitigate future harms of an ongoing pandemic. *Id*. Thus, the governmental orders were not issued due to damage to other property. Furthermore, if the Court agreed with Daniels' argument, this would necessarily defeat Daniels' claim for coverage as the government orders cannot be both "cause and result of the damage." ECF No. 18, pg. 10.

Because Daniels cannot satisfy the first element, the Court finds in favor of Beazley regarding Civil Authority coverage.

**3. Microorganism & Contamination Exclusions**

Beazley cites to a number of legal and scientific sources in support of its argument that COVID-19 falls within the scope of the Microorganism and Contamination Exclusions. ECF No. 18, pgs. 2-6. Daniels argues that neither the Microorganism nor Contamination Exclusions apply because COVID-19 was not "present" at its Properties, which Daniels asserts is required in order for either exclusion to apply. ECF No. 17, pgs. 16-19.

Contrary to Daniels' argument, no such "presence" requirement exists within the language of the Microorganism Exclusion. Daniels is correct in asserting that the "presence" of COVID-19 is one scenario where the exclusion would apply. ECF No. 17, pgs. 16-19. However, the Exclusion is broader as it also includes damage "indirectly arising out of or relating to" a

microorganism. ECF No. 18, pgs. 3-4. As other courts have already concluded, the governmental orders were a result of COVID-19, and therefore any losses stemming from such orders falls within the scope of "indirectly arising out of or relating to." *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, No. 5:20-CV-00680-OLG, 2020 WL 6578417, at *7 (W.D. Tex. Oct. 26, 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-00461-DAE, 2020 WL 4724305, at *6-7 (W.D. Tex. Aug. 13, 2020); *Hajer v. Ohio Sec. Ins. Co.*, No. 6:20-CV-00283, 2020 WL 7211636, at *4-5 (E.D. Tex. Dec. 7, 2020). Consequently, the Court finds that the Microorganism applies here.

### III. Conclusion

After considering the arguments and relevant law, the Court has found in favor of Beazley for each issue. Thus, for the reasons discussed above, Beazley's Motion on the Pleadings is hereby **GRANTED** and this case is **CLOSED**.

**SIGNED** this 22nd day of June, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE